UNITED STATES DISTRICT COURT

NORTHERN DISTRICT OF CALIFORNIA

EMORY MCPHERSON,

          Plaintiff,

    v.

ALAMO, et al.,

          Defendants.

Case No.  15-cv-03145-EMC

**ORDER GRANTING SUMMARY JUDGMENT FOR DEFENDANTS ON NEGLIGENCE CLAIM, AND DENYING PLAINTIFF'S MOTIONS FOR SUMMARY JUDGMENT**

Docket Nos. 24, 31, 39

## I.   INTRODUCTION

This *pro se* prisoner's civil rights action is now before the Court for consideration of three motions for summary judgment.  For the reasons discussed below, the defense motion for partial summary judgment on the state law negligence claim will be granted, and Plaintiff's two motions for summary judgment will be denied.  The Court also will refer this action to the *Pro Se* Prisoner Mediation Program.

## II.   BACKGROUND

A.   Procedural History

In his first amended complaint (Docket No. 8), Mr. McPherson alleges that he slipped and fell down the stairs while he was handcuffed behind his back and returning from the shower on May 12, 2014.  His first amended complaint alleges the following:

Due to the known risk of falls, "it is the 'safe custody' policy of the California Department of Corrections and Rehabilitation (CDCR) that anytime an inmate is handcuffed behind his back and made to walk, the inmate shall be escorted and assisted by prison staff to prevent injury." Docket No. 8 at 5.  During 2013 and 2014, Salinas Valley prison staff operated "a 'quick shower' policy and practice that was contrary to" the "safe custody" practice and had the inmates walking

United States District Court
For the Northern District of California

1    up and down the wet and slippery stairs to and from the shower unescorted and unassisted.  *Id.* at

2    6.  Some inmates slipped and fell.  Warden Grounds, captain Parin and subordinate prison staff

3    developed and implemented the "quick shower" policy requiring inmates to be handcuffed behind

4    their backs and go up and down stairs for the second-tier shower unescorted and unassisted by

5    prison staff, notwithstanding known safety risks.  *Id.* at 13.

6           On May 12, 2014, Mr. McPherson, who was housed on the bottom tier, was called for his

7    turn to take a shower and directed to take the shower on the second floor.  His hands were placed

8    in handcuffs behind his back.  He unsuccessfully objected to the order to shower on the second

9    floor, explaining that he had previously "slipped and partially fell during a prior second-tier

10   shower" and was concerned about the danger of walking on the slippery stairs.  *Id.* at 8.  He was

11   ordered by correctional officer ("C/O") Alamo and C/O Ray to go up to the second-tier shower or

12   be disciplined for disrupting and delaying their shower procedures.  Defendants C/O Ray, C/O

13   Alamo and C/O Gonzales refused Mr. McPherson's requests to shower on the bottom tier or to be

14   handcuffed in front of his body.  During the escort, C/O Alamo and C/O Ray argued, and C/O

15   Alamo walked away.  *Id.* at 9.  After Mr. McPherson showered and was again handcuffed behind

16   his back by C/O Ray, C/O Ray ordered him to return to his cell but refused to escort him down the

17   stairs, despite Mr. McPherson's expressed concerns for his safety.   C/O Gonzales also ordered

18   Mr. McPherson to return to his cell downstairs.   As Mr. McPherson stepped onto the first step of

19   the stairs, he fell down the stairs and landed on the cement floor of the building unconscious,

20   where he allegedly lay for many minutes before he was put on a backboard and taken to the

21   hospital.  *Id.* at 10.  He was seriously injured in the fall.  *Id.* at 11.

22          Defendants Parin and Grounds were dismissed from this action at Mr. McPherson's

23   request.  Docket No. 56.

24          Now pending are three motions for summary judgment.  First, there is the defense motion

25   for summary judgment on the state law negligence claim.[1]  (Docket Nos. 24, 30.)  Second, there is

26   ───────────────────

27   [1] For the sake of convenience, the Court refers to this as the defense motion for summary
     judgment.  The motion for summary judgment (Docket No. 24) originally was filed by defendants
28   Parin and Grounds, who were represented by a different attorney than the attorney representing
     defendants Alamo, Ray and Gonzalez.  In the motion, defendants Parin and Grounds argued that

Mr. McPherson's motion for summary judgment and/or summary adjudication against C/O Alamo.  (Docket No. 31.)  Third, there is Mr. McPherson's motion for summary judgment and/or summary adjudication against C/Os Ray and Gonzales.  (Docket No. 39.)

B.    Facts For The Defense Motion For Summary Judgment

Defendants argue they are entitled to judgment as a matter of law on Mr. McPherson's state law negligence claim because Mr. McPherson failed to comply with the statute of limitations. The relevant facts are straightforward and few in number.  The following facts are undisputed unless otherwise noted.

Mr. McPherson fell on the stairs and was injured on May 12, 2014.  Docket No. 8 at 5.

The California Victim Compensation and Government Claims Board rejected his claim (Claim No. G618896) on November 20, 2014, and mailed the notice of rejection on November 26, 2014.  Docket No. 25 at 4; Docket No. 8 at 3.  The rejection notice mailed to Mr. McPherson included this warning:  "Subject to certain exceptions, you have only six months from the date this notice was personally delivered or deposited in the mail to file a court action on this claim.  See Government Code Section 945.6."  Docket No. 25 at 4.

Mr. McPherson mailed his complaint to this Court on June 30, 2015.  Docket No. 1 at 43. The complaint came in an envelope postmarked July 3, 2015, and was stamped "filed" on July 8, 2015.  Docket No. 1 at 1; Docket No. 1-1.

C.    Facts For Plaintiff's Motions For Summary Judgment

The following facts are undisputed unless otherwise noted.

The relevant events occurred on May 12, 2014, in a housing unit in Facility B at Salinas Valley State Prison.

---

they were entitled to judgment as a matter of law on the Eighth Amendment claim and on the state law negligence claim.  The motion was joined as to the state law claim by defendants Alamo, Ray and Gonzales the next day.  Docket No. 30.  Thereafter, defendants Parin and Grounds were dismissed.  Due to potential confusion about the parties' briefing duties, the Court issued an order on June 23, 2016, explaining that the defense motion remained pending as to the state law claim, and that plaintiff had to file an opposition "addressing the argument that the state law claims against the correctional defendants are barred by the statute of limitations."  Docket No. 56 at 2. The Court set a briefing schedule.  Id. at 3.  Plaintiff later filed an opposition (Docket No. 58), and Defendants filed a reply (Docket No. 60).

United States District Court
For the Northern District of California

**United States District Court**
For the Northern District of California

1    Mr. McPherson lived on the bottom tier of his housing unit.  In his housing unit, there were

2  three showers on the bottom tier and three showers on the top tier.  C/O Alamo and C/O Ray

3  worked as floor officers, and C/O Gonzales worked as a control booth officer, on the second watch

4  in Mr. McPherson's housing unit.  Docket No. 49-2 at 1-2.  One of C/O Gonzales' jobs as control

5  booth officer was to release cell doors and shower doors when asked to do so by floor officers.

6  Docket No. 49-3 at 2.

7    Following riots, Facility B was placed on a "modified program" on May 9, 2014.  *See*

8  Docket No. 58 at 36.  The modified program lasted at least through May 12, 2014.  During the

9  modified program, contact between inmates was severely limited so that prison officials could

10  investigate the riots.  Docket No. 49-4 at 5.  For prison officials, "[i]t was important to ensure

11  inmates could not pick up messages from other inmates, engage in inappropriate behavior, fight

12  with other inmates, or initiate another riot."  *Id.*

13    The restrictions in place under the modified program in effect on May 12, 2014 included

14  requirements that all inmates were to be escorted in restraints, fed in their cells, and allowed to

15  take a shower once every 72 hours.  Docket No. 49-2 at 2.  According to C/O Alamo, showers

16  were only provided every third day; on the other two days, the floor officers were responsible for

17  conducting searches.  *Id.*  Inmates were supposed to be sent to showers on their own tiers and only

18  with their own cellmates during the modified program.  Docket No. 49-4 at 5; Docket No. 29 at 6.

19  "Showers were limited to inmates' own tiers to minimize the number of other inmates they may be

20  able to communicate with on their way to the shower."  Docket No. 49-4 at 5.

21    C/O Alamo described the shower procedure used on May 12, 2014.  She and C/O Ray

22  went from cell to cell, asking inmates if they wanted to shower.  "If the showers on the bottom tier

23  were full, then we would escort the inmates to the top tier for showering," so that all showers

24  could be completed within the time limits imposed by the modified program.  Docket No. 49-2 at

25  2.

26    The parties disagree as to the circumstances of Mr. McPherson's trip to and from the

27  shower.  Defendants' version is as follows:  According to C/O Alamo, she handcuffed Mr.

28  McPherson and his cellmate and escorted them to showers on the top tier.  Once the inmates were

in the shower, she removed their handcuffs to allow them to shower, and then went into the office on the first floor to do paperwork.  Later, C/O Alamo heard a commotion and looked out to see Mr. McPherson on the ground next to the stairs.  Docket No. 49-2 at 2.  She did not see him fall. *Id.*  According to C/O Ray, he was flagged down on the second tier by Mr. McPherson after he and his cellmate were finished with their showers.  Docket No. 49-5 at 2.  C/O Ray handcuffed both inmates while they were in the shower, and control booth C/O Gonzales released the shower door. *Id.*  Once the door was opened, "McPherson immediately headed out of the shower and down the stairs.  His cell mate followed and [C/O Ray] followed closely behind them, escorting them down the stairs." *Id.*  According to C/O Ray, when Mr. "McPherson was four or five stairs from the bottom of the stair case, he paused and then tucked his head into his shoulders and 'fell.' It did not appear that he fell naturally; rather it appeared rehearsed." *Id.* at 2-3.

The parties disagree about Defendants' awareness of the risk generally and the risk to Mr. McPherson in particular.  All three Defendants declare that they had not previously seen an inmate fall on the stairs.  All three Defendants deny that Mr. McPherson told them that he previously had slipped on the stairs, deny that Mr. McPherson expressed concern about showering on the second tier, deny that Mr. McPherson asked to be handcuffed in the front, and deny that Mr. McPherson asked for an escort descending the stairs.  All three Defendants also state that they did not order Mr. McPherson to walk up the stairs, did not order him to take a shower, and did not threaten him with a rules violation report.  Docket Nos. 49-2 at 2-3, 49-3 at 2-3, and 49-5 at 2-3.

The parties dispute whether C/O Alamo and C/O Ray were arguing during the time Mr. McPherson was going to and from the shower.  C/O Alamo and C/O Ray deny that they were arguing.  Docket Nos. 49-2 at 3 and 49-5 at 3.

The parties dispute whether the stairs were wet and slippery.  Defendants present photos of the staircase and steps.  Docket No. 49-2 at 5-6.  The individual steps on the staircase are steel grate steps, rather than steps made of solid and/or smooth surface. *See id.*  Water easily could drain through the holes on the steel grate steps in the photos.

The parties dispute whether there was a program called a "quick shower program."  Defendants presented evidence that there is no such thing as a quick shower program at Salinas

1    Valley.  *See* Docket Nos. 49-2, Docket No. 49-3 at 2; Docket No. 49-5 at 2.

2    **III.    VENUE AND JURISDICTION**

3        Venue is proper in the Northern District of California because the events or omissions

4    giving rise to the complaint occurred at a prison in Monterey County, which is located within the

5    Northern District.  *See* 28 U.S.C. §§ 84, 1391(b).  The Court has federal question jurisdiction over

6    this action brought under 42 U.S.C. § 1983.  *See* 28 U.S.C. § 1331.

7    **IV.    LEGAL STANDARD FOR SUMMARY JUDGMENT**

8        Summary judgment is proper where the pleadings, discovery and affidavits show that there

9    is "no genuine dispute as to any material fact and [that] the moving party is entitled to judgment as

10   a matter of law."  Fed. R. Civ. P. 56(a).  A court will grant summary judgment "against a party

11   who fails to make a showing sufficient to establish the existence of an element essential to that

12   party's case, and on which that party will bear the burden of proof at trial . . . since a complete

13   failure of proof concerning an essential element of the nonmoving party's case necessarily renders

14   all other facts immaterial."  *Celotex Corp. v. Catrett*, 477 U.S. 317, 322-23 (1986).  A fact is

15   material if it might affect the outcome of the lawsuit under governing law, and a dispute about

16   such a material fact is genuine "if the evidence is such that a reasonable jury could return a verdict

17   for the nonmoving party."  *Anderson v. Liberty Lobby, Inc.,* 477 U.S. 242, 248 (1986).

18       In a typical summary judgment motion, a defendant moves for judgment against plaintiff

19   on the merits of his claim.  In such a situation, the moving party bears the initial burden of

20   identifying those portions of the record which demonstrate the absence of a genuine dispute of

21   material fact.  The burden then shifts to the nonmoving party to "go beyond the pleadings, and by

22   his own affidavits, or by the 'depositions, answers to interrogatories, or admissions on file,'

23   designate 'specific facts showing that there is a genuine issue for trial.'"  *Celotex*, 477 U.S. at 324.

24       Where the moving party bears the burden of proof at trial, he must come forward with

25   evidence that would entitle him to a directed verdict if the evidence went uncontroverted at trial.

26   *See Houghton v. South*, 965 F.2d 1532, 1536 (9th Cir. 1992).  He must establish the absence of a

27   genuine dispute of fact on each issue material to his affirmative defense or claim for relief.  *Id*. at

28   1537; *see also Anderson,* 477 U.S. at 248.  When a defendant moves for summary judgment on an

affirmative defense and has come forward with this evidence, the burden shifts to the plaintiff (as the non-moving party) to set forth specific facts showing the existence of a genuine dispute of fact on the defense.  Similarly, when a plaintiff moves for summary judgment on a claim for relief and has come forward with evidence establishing the absence of a genuine dispute of fact on each issue material to his claim for relief, the burden shifts to the defendant (as the non-moving party) to set forth specific facts showing the existence of a genuine dispute of fact on one or more elements of the claim.

A verified complaint may be used as an opposing affidavit under Rule 56, as long as it is based on personal knowledge and sets forth specific facts admissible in evidence.  *See Schroeder v. McDonald*, 55 F.3d 454, 460 & nn.10-11 (9th Cir. 1995) (treating plaintiff's verified complaint as opposing affidavit where, even though verification not in conformity with 28 U.S.C. § 1746, plaintiff stated under penalty of perjury that contents were true and correct, and allegations were not based purely on his belief but on his personal knowledge).  Mr. McPherson's first amended complaint (i.e., Docket No. 8) is made under penalty of perjury and is considered in the adjudication of the summary judgment motions.

The court's function on a summary judgment motion is not to make credibility determinations or weigh conflicting evidence with respect to a disputed material fact.  *See T.W. Elec. Serv. v. Pac. Elec. Contractors Ass'n*, 809 F.2d 626, 630 (9th Cir. 1987).  The evidence must be viewed in the light most favorable to the nonmoving party, and inferences to be drawn from the facts must be viewed in a light most favorable to the nonmoving party.  *See id*. at 631.

## V.   **DISCUSSION**

A.   Defendants' Motion For Summary Judgment On State Law Negligence Claim

Defendants argue that Mr. McPherson's state law negligence claim is barred because he failed to file this action before the expiration of the statute of limitations period that applies to claims covered by California's Government Claims Act.

The California Tort Claims Act, *see* Cal. Gov't Code §§ 810, et seq. -- commonly referred to as the California Government Claims Act by the courts, *see City of Stockton v. Sup. Ct.*, 42 Cal. 4th 730, 741-42 (Cal. 2007) -- requires a person to present his claim to the California Victim

United States District Court
For the Northern District of California

Compensation and Government Claims Board ("Board") before he may file an action for damages against a California governmental entity or employee for personal injury or death. *See* Cal. Gov't Code §§ 905.2, 911.2, 945.4, 950.2.

The Government Claims Act has strict time limits for filing such a claim with the Board *and* for filing an action in court after the rejection of such a claim. A claimant must present his personal injury tort claim to the Board within six months of the accrual of the cause of action. *See* Cal. Gov't Code § 911.2. More importantly for present purposes, an action against a governmental entity or employee covered by the claims-presentation requirement must be filed within six months following written notice of rejection of the claim by the Board. *See* Cal. Gov't Code § 945.6(a)(1). Section 945.6's six-month bar is construed "to mean an action must be filed within six calendar months or 182 days, whichever is longer," due to months having different numbers of days. *Gonzales v. Cnty. of Los Angeles*, 199 Cal. App. 3d 601, 604 (Cal. Ct. App. 1988). The six-month deadline runs from the date the written notice of rejection is mailed, rather than the date that notice is received by the claimant. *See Dowell v. County of Contra Costa*, 173 Cal. App. 3d 896, 901 (Cal. Ct. App. 1985).

The timeliness of actions as to which the claims-presentation requirement applies "is governed by the specific statute of limitations set forth in the Government Code, not the statute of limitations applicable to private defendants." *Cnty. of Los Angeles v. Sup. Ct.*, 127 Cal. App. 4th 1263, 1267 (Cal. Ct. App. 2005). The tolling provisions for prisoners, minors, and mentally incapacitated persons that exist for statutes of limitations applicable to private defendants do not apply to the deadlines for claims covered by the California Government Claims Act. *See, e.g.,* Cal. Civ. Proc. Code §§ 352(b), 352.1(b). The six-month deadlines in the California Government Claims Act apply only to state law claims, and not to claims made under 42 U.S.C. § 1983. *See Silva v. Crain*, 169 F.3d 608, 610 (9th Cir. 1999).

Defendants are entitled to judgment as a matter of law that Mr. McPherson's state law negligence claim is time-barred. The undisputed evidence shows that the Board mailed the notice of rejection of the claim to Mr. McPherson on November 26, 2014, and warned Mr. McPherson that he had only six months from the date on which the notice was mailed to file a court action.

**United States District Court**
For the Northern District of California

1   The later of six calendar months or 182 days was May 27, 2015.  The undisputed evidence further

2   shows that Mr. McPherson did not give his complaint to prison officials to mail to the court until

3   June 30, 2015, more than a month after the limitations period expired.[2]  On the evidence in the

4   record, no reasonable trier of fact could conclude that Mr. McPherson commenced this action not

5   later than six months after the notice of rejection of his claim was mailed to him.  He indisputably

6   did not comply with the California Government Claims Act statute of limitations for commencing

7   a court action after rejection of his claim.  *See* Cal. Gov't Code § 945.6(a)(1) (action must be

8   commenced no more than six months after the notice of rejection of the claim is mailed); Cal. Civ.

9   Proc. Code § 411.10 (action is "commenced" by filing a claim with the court).

10           Mr. McPherson argues that he was impeded from commencing this action by the allegedly

11  long delays in processing his prison administrative appeals.  This argument is unpersuasive

12  because a "[p]laintiff's obligation to exhaust the administrative remedies available to prisoners . . .

13  is independent of the obligation to comply with the Government Claims Act."  *Parthemore v. Col*,

14  221 Cal. App. 4th 1372, 1376 (Cal. Ct. App. 2013); *see also Martinez v. Tilton*, 2013 WL

15  5670869, *3 (E.D. Cal. 2013) ("the prison's inmate appeals process and the Government Claims

16  Act process are separate processes and there is no support for a finding that the allegedly improper

17  cancellation of Plaintiff's inmate appeal had any effect whatsoever on his ability to timely present

18  his Government Claims Act claim.")  Mr. McPherson could have filed an action in state court

19  asserting his state law negligence claim at any time after the notice of rejection of the claim was

20  mailed to him on November 26, 2014.  If he wanted to also pursue a § 1983 claim, he could have

21  amended his complaint in that action or filed a second action to assert his § 1983 claim after

22  exhausting prison administrative remedies.

23           Mr. McPherson also contends that he should be excused from complying with the

24  California Government Claims Act deadlines because he was suffering from the injuries sustained

25

26  _____

27  [2] Mr. McPherson gave the complaint to prison officials on June 30, 2015, to mail to the Court.  For purposes of determining compliance with the California Government Claims Act deadline for filing an action, courts use the prisoner mailbox rule, i.e., the document is "deemed filed when it is delivered to prison authorities for forwarding to the . . . court."  *Moore v. Twomey*, 120 Cal. App.

28  4th 910, 918 (Cal. Ct. App. 2004).

in the fall during "the month of May 2015 and all during 2015." Docket No. 58 at 5. He has not shown that the Government Claims Act permits tolling for an injury. Moreover, even if tolling was allowed for someone fully incapacitated by an injury, Mr. McPherson was not so debilitated, as he was able to and did file other documents during the time of the claimed incapacity. He asserts that he was incapacitated during all of 2015, yet he filed this action in the middle of 2015, he gathered his materials before filing the action, and he submitted inmate appeals at various levels in 2015 and earlier. Also, despite the alleged incapacity, Mr. McPherson was able to make inquiries of other inmates trying to obtain someone to help him prepare his action before finding inmate Crayton to help him. Mr. McPherson does not state when these events occurred, but presumably they occurred before he filed his complaint. His self-described diligent efforts to find an attorney or a helper inmate to get his complaint filed undermine his argument that he was too mentally and physically incapacitated to file his complaint. *See* Docket No. 58 at 5.

The defense motion for partial summary judgment on the state law negligence claim is **GRANTED**. Mr. McPherson's state law negligence claim is barred by the statute of limitations in California Government Code § 945.6. Having determined that the state law negligence claim is time-barred, there is no need to discuss the merits of that claim.

B.   <u>Plaintiff's Motion For Summary Judgment On The Eighth Amendment Claim</u>

The Constitution does not mandate comfortable prisons, but neither does it permit inhumane ones. *See Farmer v. Brennan*, 511 U.S. 825, 832 (1994). Deliberate indifference to an inmate's health or safety may violate the Eighth Amendment's proscription against cruel and unusual punishment. *Estelle v. Gamble*, 429 U.S. 97, 104 (1976). A prison official violates the Eighth Amendment only when two requirements are met: (1) the deprivation alleged is, objectively, sufficiently serious, and (2) the official is, subjectively, deliberately indifferent to the inmate's health or safety. *See Farmer*, 511 U.S. at 834. Merely negligent conduct does not violate the Eighth Amendment. *Id.* at 835-36.

As evident in the "Background" section above, the parties' versions of the incident differ sharply with regard to the circumstances surrounding Mr. McPherson's fall. Defendants even dispute whether it was an accidental fall. When facts are disputed, the Court must accept as true

**United States District Court**
For the Northern District of California

1    the non-moving party's version of the facts for purposes of ruling on the summary judgment

2    motions.  Thus, for purposes of ruling on Mr. McPherson's motions on the merits of his Eighth

3    Amendment claim, the Court must accept as true the Defendants' version of any disputed facts.

4        Viewing the evidence in the light most favorable to Defendants, a reasonable trier of fact

5    could find that allowing an inmate to walk up and down the steel grate steps while handcuffed

6    behind his back and without a correctional officer holding onto him did not amount to an

7    objectively serious condition, even if the steps were wet.  Viewing the evidence in the light most

8    favorable to Defendants, a reasonable trier of fact could find that each Defendant did not act with

9    deliberate indifference to a known risk to Mr. McPherson's safety.  Defendants have shown triable

10   issues as to whether there was an objectively serious condition and whether they acted with the

11   requisite mental state of deliberate indifference.

12        If believed, Defendants' version would lead to a conclusion that they were not deliberately

13   indifferent to a known risk to Mr. McPherson's health and safety and therefore are not liable on

14   his Eighth Amendment claim.  On the other hand, if believed, Mr. McPherson's version might

15   lead to a conclusion that Defendants did violate his Eighth Amendment rights.  Summary

16   judgment is not the place for credibility determinations.  Defendants have established a "genuine

17   issue for trial'" concerning whether they were deliberately indifferent to Mr. McPherson's safety.

18   *Celotex Corp.*, 477 U.S. at 324 (quoting former Fed. R. Civ. P. 56(e)).  Summary judgment

19   therefore is not appropriate on the Eighth Amendment claim.

20        Finally, Mr. McPherson requests summary adjudication of several issues as alternative

21   relief if his motion for summary judgment is not granted.  He is not entitled to summary

22   adjudication of any of the issues he identifies.  Five of the six issues he wants summarily

23   adjudicated against C/O Alamo (*see* Docket No. 31 at 11-12) pertain to her knowledge. Six of the

24   seven issues he wants summarily adjudicated against C/O Ray and C/O Gonzales (Docket No. 39

25   at 11-13) pertain to their knowledge.  Defendants' evidence shows the existence of genuine issues

26   of fact as to each Defendants' knowledge.  In a nutshell, Defendants deny knowing there was a

27   risk to Mr. McPherson's safety in the way they had him go to and from the upper tier to take a

28   shower on May 12, 2014.  The final issue he wants summarily adjudicated pertains to the result of

1    an investigation into the incident (*see* Docket No. 31 at 12 and Docket No. 39 at 13), but the

2    evidence he points to does not demonstrate that there are no genuine issues of fact about that

3    investigation or its results.  For example, the critical document he relies on does not identify the

4    particular policy or policies violated and does not identify which Defendant(s) violated the

5    unidentified policy or policies.  *See* Docket No. 35 at 29 ("Staff: did . . . violate CDCR policy with

6    respect to one or more of the issues appealed").  Mr. McPherson's alternative motion for summary

7    adjudication is denied because Mr. McPherson has not shown that any of these issues are "not

8    genuinely in dispute."  Fed. R. Civ. P. 56(g).

9    C.    Referral to Pro Se Prisoner Mediation Program

10           The Court has granted summary judgment on the state law negligence claim.  There

11   remains for adjudication Mr. McPherson's Eighth Amendment claim against three defendants.

12   This case appears a good candidate for the court's mediation program.

13           Good cause appearing therefor, this case is now referred to Magistrate Judge Vadas for

14   mediation or settlement proceedings pursuant to the Pro Se Prisoner Mediation Program.  The

15   proceedings will take place within one hundred twenty days of the date this order is filed.

16   Magistrate Judge Vadas will coordinate a time and date for mediation or/settlement proceedings

17   with all interested parties and/or their representatives and, within five days after the conclusion of

18   the proceedings, file with the Court a report for the prisoner mediation or settlement proceedings.

### VI.    CONCLUSION

20           For the foregoing reasons, the defense motion for summary judgment (Docket No. 24),

21   joined in by defendants Alamo, Gonzalez, and Ray is **GRANTED** as to the state law negligence

22   claim.  (Docket No. 30.)  Defendants are entitled to judgment as a matter of law in their favor on

23   the state law negligence claim because that claim is barred by the applicable statute of limitations.

24   Plaintiff's motions for summary judgment are **DENIED**.  (Docket Nos. 31, 39.)

25   ///

26   ///

27   ///

28   ///

United States District Court
For the Northern District of California

1    This action is now referred to Magistrate Judge Vadas for mediation or settlement

2  proceedings pursuant to the Pro Se Prisoner Mediation Program.  The Clerk will send a copy of

3  this order to Magistrate Judge Vadas.

4

5    **IT IS SO ORDERED**.

6

7  Dated: December 8, 2016

8    _____

9    EDWARD M. CHEN
    United States District Judge